*Formatted for Electronic Distribution*                                                                                                                                                                                             *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT



Filed & Entered
On Docket
May 27, 2016

_____

**In re:**
    **JAMES L. ZUTELL,**                                                                                Chapter 7 Case
               Debtor.                                                                                              # 14-10465
_____

**CYNTHIA ISLEIB and CAROL AINES,**
               Plaintiffs,
    v.                                                                                                                   Adversary Proceeding
                                                                                                                      # 14-1012
**JAMES L. ZUTELL,**
               Defendant.
_____

*Appearances:*  *Karl Anderson, Esq.*                                                                *Paul Kulig, Esq.*
                      *Anderson & Eaton, P.C.*                                                        *Kulig Law Offices, P.C.*
                      *Rutland, VT*                                                                                *Rutland, VT*
                      *For the Plaintiffs*                                                                          *For the Defendant*

## MEMORANDUM OF DECISION
### DENYING EXCEPTION OF PLAINTIFFS' JUDGMENT FROM DISCHARGE,
### OVERRULING OBJECTION TO EXEMPTION,
### AND DENYING DISMISSAL OF CASE ON BAD FAITH GROUNDS

      Cynthia Isleib and Carol Aines (the "Plaintiffs") filed a three-count complaint against James Zutell (the "Defendant") seeking to (i) except from discharge a judgment-based claim they hold against the Defendant on the basis that it arose from the Defendant's willful and malicious injury to the Plaintiffs and/or their property; (ii) disallow the Defendant's claimed exemption in a tractor; and (iii) dismiss this bankruptcy case as a bad faith filing. After considering the parties' various pleadings in this proceeding, the state court decision entered in the pre-petition litigation between the parties, the evidence the parties presented at trial, and the controlling law, this Court grants judgment in favor of the Defendant on all three counts, for the reasons set forth below.

1

## ISSUES PRESENTED

The complaint presents three legal issues. First, does the Plaintiffs' judgment-based claim against the Defendant arise from the type of willful and malicious injury that is excepted from the bankruptcy discharge under 11 U.S.C. § 523(a)(6)[1] and, as a corollary, do the state court's pre-petition findings related to this claim fulfill the criteria necessary for relief in this Court? Second, can the Defendant claim a certain tractor as exempt joint property under § 522(b)? Third, has the Defendant filed this bankruptcy case in bad faith, thus warranting dismissal under § 707(a)?

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered in this District on June 22, 2012. The Court declares the three causes of action raised in the complaint are core matters under 28 U.S.C. §§ 157(b)(2)(A), (B) and (I), over which this Court has constitutional authority to enter a final judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiffs and the Defendant own nearby residential lots in Sudbury, Vermont. During the winter of 2008-2009, the Defendant accessed the Plaintiffs' lot and cut down two old, large maple trees that belonged to the Plaintiffs. Upon discovering their trees had been cut down, the Plaintiffs filed a complaint alleging timber trespass against the Defendant in Rutland Superior Court on August 25, 2010. Following a bench trial, the Superior Court (Teachout, J.) issued a decision on March 1, 2012 (the "Decision").[2] Isleib v. Zutell, No. 635-8-10, 2012 Vt. Super. LEXIS 35, at *1 (Vt. Super. Ct. Mar. 2, 2012).

After considering evidence from the parties and tree experts, and the Defendant's admission, Judge Teachout found the Defendant had cut down two of the Plaintiffs' trees and determined the value of the Plaintiffs' loss to be $53,700. Based upon these (and other) findings of fact, the Superior Court reached several conclusions of law, including the following:

> ***Proof of Tree Cutting on Plaintiffs' Land***.  Plaintiffs have proved that Defendant James Zutell cut the two trees at issue, located on Plaintiffs' property, without permission or any valid right or basis to do so.  Plaintiffs are entitled to treble damages under 13 V.S.A. § 3603 [sic], or $53,700 x 3 = $161,700 [sic], unless "it appears on trial that the defendant acted through mistake," in which case Plaintiff would only be entitled to single damages.

Zutell, 2012 Vt. Super. LEXIS 35, at *11.[3]

Starting with the finding that the Defendant cut down the trees, the Superior Court began its analysis with the presumption that the Plaintiffs were entitled to treble damages unless the Defendant could show he cut the Plaintiffs' trees by mistake. See State of Vermont v. Singer, 904 A.2d 1184, 1187

2

(Vt. 2006) (acknowledging jury verdict including answer to specific question of whether the defendant's cutting down of the trees was an "honest mistake"); Ripchick v. Pearsons 109 A.2d 347, 352 (Vt. 1954) (to escape treble damages, defendant must show that he had good reason to believe timber was on his land, such reason as would lead a man while in the exercise of ordinary care and prudence to so believe). The Superior Court found the Defendant failed to prove he cut the Plaintiffs' trees by mistake and consequently, it determined the Plaintiffs were entitled to treble damages plus attorney's fees and costs, for a total judgment in the amount of $171,312.50 (the "Judgment").

On August 15, 2014, the Defendant filed for relief under chapter 7 of the Bankruptcy Code. See case # 14-10465, doc. # 1. The Defendant listed the Plaintiffs' Judgment claim on Schedule F of his bankruptcy petition. Also pertinent to this proceeding, on Schedule C of that petition, the Defendant claimed an $8,000 exemption for a 2008 Mahindra tractor valued at that amount (the "Tractor").

On November 7, 2014, the Plaintiffs filed a complaint commencing the instant adversary proceeding (AP # 14-1012, doc. # 1, the "Complaint").[4] The Complaint asked the Court (1) to determine the Plaintiffs' Judgment claim was excepted from the Defendant's discharge, under § 523(a)(6), because it arose from the Defendant's willful and malicious injury to the Plaintiffs and/or their property; (2) to disallow the Defendant's exemption in the Tractor; and (3) to dismiss the Defendant's bankruptcy case as a bad faith filing under § 707(a), on the basis that he was primarily motivated to avoid the Judgment and attempting to obtain an "inequitable discharge" at the Plaintiffs' expense (doc. # 1). On December 29, 2014, the Defendant filed an answer to the Complaint (doc. # 6). Thereafter, there were multiple extensions of time sought, and granted, in connection with discovery and other pre-trial matters.

On July 8, 2015, the Plaintiffs filed a motion to compel the Defendant to answer interrogatories and produce documents (doc. # 21), to which the Defendant objected on grounds that the interrogatories and requests to produce were aimed solely at enforcement of the Judgment, sought information that was duplicative of information already contained in the Defendant's bankruptcy schedules, and were not reasonably calculated to lead to the discovery of admissible evidence on the issues raised in the adversary proceeding (doc. # 28). The Court sustained the Defendant's objection and entered an order denying the Plaintiffs' motion to compel (doc. # 31).

On December 1, 2015, the parties filed a joint statement of undisputed facts (doc. # 47). Later on that same date, the Plaintiffs filed a motion in limine (doc. # 48, the "Motion in Limine") seeking to limit the trial evidence, with respect to the non-dischargeability claim, to just the Judgment. The Plaintiffs argued the Judgment set forth a sufficient basis for this Court to find the Defendant's conduct was willful and malicious under § 523(a)(6) and thus, under the doctrine of collateral estoppel, no further evidence on that point was required. The Defendant filed a timely objection to the Motion in Limine, arguing the

3

Judgment did not establish the Plaintiffs' claim arose from a willful and malicious injury to them and/or their property, and that the Court should either dismiss the first cause of action in the Complaint or set it for trial (doc. # 56). The Court sustained the Defendant's objection and denied the Motion in Limine, specifically identifying the Plaintiffs' burden of proof on the first cause of action:

> In order to prevail here, the Plaintiffs must prove the Defendant acted with "a deliberate intent to injure, not merely [that he committed] a deliberate or intentional act that [led] to injury." <u>Kawaauhau v. Geiger</u>, 522 U.S. 57, 61 (1998). This is not an issue the Superior Court addressed in the trespass action, and it made no determination on this point. Crucially, there is nothing in the Superior Court decision indicating the parties litigated the Defendant's intent, or specifying whether the Defendant cut the trees with the intent to cause injury to the Plaintiffs and/or their property.

Doc. # 57, p. 2.

      The Court held a pre-trial conference on January 22, 2016 and set the trial for February 12, 2016 (doc. # 54). At the pre-trial conference, the parties discussed how the trial would proceed and whether any outstanding issues could be resolved prior to trial. The Defendant asserted the objection to exemption was not timely filed but might be subject to resolution by the parties prior to trial, and the parties indicated they might also be able to settle some of the outstanding discovery disputes. To memorialize the conclusions reached at that pre-trial hearing, the Court entered a final pre-trial order (doc. # 58, the "Final Pre-Trial Order") setting deadlines by which the parties would address (i) the possible withdrawal of the objection to exemption cause of action, (ii) the discovery dispute regarding the bad faith cause of action, and (iii) the filing of a joint final pre-trial statement. It also directed the parties to introduce only such evidence as was necessary to address the intent aspect of the non-dischargeability cause of action, and to address the three causes of action separately, with opening and closing statements for each. Pursuant to the Final Pre-Trial Order, the Plaintiffs filed a motion to expand discovery on the bad faith cause of action (doc. # 62, the "Motion to Expand Discovery"), which the Defendant opposed (doc. # 66); the Defendant filed a motion to dismiss the objection to exemption cause of action (doc. # 64, the "MTD Count II"); and the parties filed a joint pre-trial statement (doc. # 70).

      On February 9, 2016, the Court entered an order denying the Defendant's MTD Count II and granting in part the Plaintiffs' Motion to Expand Discovery (doc. # 72). With respect to the Defendant's MTD Count II, which was entirely based on the timeliness of the Plaintiffs' objection to exemption, the Court reasoned (i) the purpose of Rule 4003(b) was to put the Debtor and Court on notice of the objection to exemption, (ii) there was no statute or rule prohibiting a party in interest from asserting an exemption objection as part of an adversary proceeding, (iii) the Complaint had been filed prior to the deadline set by Bankruptcy Rule 4003(b), and (iv) therefore, the Plaintiffs' objection to exemption was timely filed. With respect to the discovery requests, the Court found it would be unduly burdensome for the Defendant

4

to produce everything the Plaintiffs requested given the imminent trial date and alleged availability of much of the information in the record. The Court therefore directed the Defendant to answer only certain interrogatories and produce only those records the Defendant had previously made available to the case trustee and were currently in the possession of either the Defendant or his attorney. The Defendant filed a certificate of service of his answers to interrogatories and requests to produce on February 11, 2016 (doc. # 73).

The Court held a trial on February 12, 2016 on the three causes of action in the Plaintiffs' Complaint. The Court granted the parties' request to file post-trial memoranda of law and once they were filed the matter was deemed fully submitted.

## DISCUSSION

Under 28 U.S.C. § 1738, a federal court must, in according full faith and credit, give a state court judgment the same preclusive effect as would be given to the judgment under the law of the state in which the judgment is rendered. See, e.g., Colliton v. Donnelly, 399 Fed. Appx. 619, 620 (2d Cir. 2010); Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996). "Under Vermont law, collateral estoppel applies if the issue at stake is identical to an issue decided in prior litigation, if the issue was actually litigated, if the prior determination of the issue was a critical and necessary part of the judgment entered in the prior decision, and if the application of issue preclusion in the subsequent action would be fair." In re Kantorski, No. 00-11040, 2001 WL 34050697, at *2 (Bankr. D. Vt. Sept. 5, 2001); see also In re Tariff Filing of Central Vermont Pub. Serv. Corp., 769 A.2d 668, 673 (Vt. 2001) (instructing that collateral estoppel "bars the relitigation of an issue, rather than a claim, that was actually litigated by the parties and decided in a prior case"). All of these criteria are established with respect to the instant proceeding. Thus, pursuant to 28 U.S.C. § 1738 and the principles of collateral estoppel, this Court is bound by the determinations of the Superior Court regarding the Debtor's liability to the Plaintiffs, and the amount of damages due as a result thereof, and grants them preclusive effect.

However, the Decision did not anticipate the question of whether the Judgment would be dischargeable in a bankruptcy case and therefore did not determine whether the Defendant's actions were willful and malicious for bankruptcy purposes. Hence, this Court must address those questions and will do so using the Decision's findings and conclusions as the starting point in each inquiry.

***1. Should the Plaintiffs' Judgment-based claim be excepted from discharge under § 523(a)(6)?***

The exceptions to an individual debtor's bankruptcy discharge, set out in § 523(a), are strictly construed in favor of debtors to meet one of the Bankruptcy Code's goals, namely, providing the debtor with a "fresh start." In re Gorruso, No. 02-11717, 2004 WL 169706, at *5 (Bankr. D. Vt. Jan. 22, 2004)(citing Gleason v. Thaw, 236 U.S. 558 (1915); In re Danns, 558 F.2d 114, 116 (2d Cir. 1977); In re

5

Bonnanzio, 91 F.3d 296, 300 (2d Cir. 1996)). However, this "fresh start" is limited to the honest but unfortunate debtor and is not available to blameworthy debtors. See id. To implement this limitation, § 523(a)(6) does not discharge an individual debtor from a debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity." See 11 U.S.C. § 523(a)(6); Kawaauhau v. Geiger, 523 U.S. 57, 59 (1998). "The statute is written in the conjunctive; it requires the Plaintiffs to show that the acts or conduct of the Defendant were both willful and malicious." In re Pion, No. 06-10538, 2007 WL 3088137, at *5 (Bankr. D. Vt. Oct. 22, 2007)(emphasis original).

A creditor must establish such willful and malicious conduct by a preponderance of the evidence. Geiger, 523 U.S. at 63; Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006).

The Bankruptcy Code does not define the terms "willful" or "malicious." See In re Gorruso, 2004 WL 169706, at *5. Case law has established that the term "willful" under § 523(a)(6) indicates "a deliberate or intentional injury, not merely [a] deliberate or intentional act that leads to injury." Geiger, 523 U.S. at 61 (emphasis original); Gerard v. Gerard, 780 F.3d 806, 811 (7th Cir. 2015); Ball, 451 F.3d at 69. It also makes clear debts arising from "reckless or negligently inflicted injuries" are not willful and therefore fall outside the scope of § 523(a)(6). Geiger, 523 U.S. at 64. "To establish that a debt is one that arises from a willful injury, a plaintiff must make a showing of debtor's subjective intent to cause injury or debtor's objective knowledge that his acts were substantially certain to cause injury." In re Shelmidine, 519 B.R. 385, 392-93 (Bankr. N.D.N.Y. 2014)(citations omitted). The Second Circuit Court of Appeals defines the term "malicious" to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will," and includes within this definition constructive or implied malice, which can be demonstrated "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." Ball, 451 F.3d at 69; In re Stelluti, 94 F.3d 84, 88 (2d. Cir.1996).

While the definitions enunciated by the Supreme Court and the Second Circuit Court of Appeals are helpful guidelines, the concept of "a debt for willful and malicious injury by the debtor to another entity or to the property of another entity" remains less than clear when examining specific fact patterns. Indeed, as the Seventh Circuit observed,

> [C]ourts are all over the lot in defining this section in § 523(a)(6)…The Second Circuit defines "malicious" as "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." The Fifth Circuit equates "willful and malicious injury" to "either an objective substantial certainty of harm or a subjective motive to cause harm." The Sixth Circuit, in [Wheeler v. Laudani] defined "willful" as "deliberate and intentional," and "malicious" as "in conscious disregard of one's duties or without just cause or excuse; it does not require ill will or specific intent to do harm." After the Supreme Court's decision in Kawaauhau v. Geiger, the Sixth Circuit, without questioning the definition in Wheeler, said that the debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." Yet the Eleventh Circuit continues to use a formula almost

6

> identical to that in the Sixth Circuit's Wheeler opinion: "'Malicious' means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will. To establish malice, a showing of specific intent to harm another is not necessary."
>
> …
>
> Notice finally that each circuit seems content to go its own way, without attempting to reconcile its verbal formulas with those of the other circuits.
>
> But whatever the semantic confusion, we imagine that all would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act.

Jendusa-Nicolai v. Larsen, 677 F.3d 320, 324 (7th Cir. 2012)(citations omitted). This is so, in part, because extricating the question of whether a debtor intended to cause injury, from the question of whether the act itself was intentional, is far from simple, and establishing facts to answer the former question in the affirmative is an evidentiary challenge, except on the rare occasion when a debtor admits s/he intended the injury. This Court finds it particularly challenging to apply the § 523(a)(6) standard in a case such as this one where (i) the creditors (or their property) suffered a serious injury, (ii) the creditors hold a substantial monetary claim, (iii) the creditors' claim is based on a state court judgment which includes findings that come quite close to establishing (though they do not actually establish) the complex two-part standard required by federal law; and (iv) the debtor did not testify with respect to the conduct underlying the non-dischargeability allegations.

In order to determine whether the Plaintiffs have met their evidentiary burden on both the willful and malicious prongs of the federal test, this Court first looks to the Decision's findings of fact and conclusions of law to determine the extent to which they address the issues now before this Court. In their argument that the Decision establishes the Defendant acted with the requisite willful and malicious intent to injure them and their property, the Plaintiffs place great emphasis on the following conclusion of law:

> [The Defendant] cut the trees because he wanted to do so and he disregarded the ownership of the land on which they stood. He did not make a legitimate or understandable mistake about the Plaintiffs' boundary; he simply ignored it, and gave an explanation after the fact in which he attempted to characterize his actions as a mistake. … Plaintiffs have proved that [the Defendant] cut the two trees at issue, located on Plaintiffs' property, without permission or any valid right or basis to do so.

Zutell, 2012 Vt. Super LEXIS 35, at *5-6, 11.

    i.    *The Malice Prong*

To satisfy the malice requirement under § 523(a)(6), the record must demonstrate the Defendant's conduct was "wrongful and without just cause or excuse." In re Stelluti, 94 F 3d. 84, 87 (2d Cir 1996).

7

The Superior Court's conclusion squarely addressed this requirement when it determined the Defendant cut the trees "without permission or any right or basis to do so." Zutell, 2012 Vt. Super LEXIS 35, at *11. Therefore, the Decision establishes the Defendant acted with the malice required by § 523(a)(6), and the Plaintiffs have met their burden of proof on the malice prong of the federal test.

  ii.  *The Willfulness Prong*

Proving willfulness is more difficult than proving malice as it often entails a more attenuated and nuanced series of factual inquiries. Here, the Plaintiffs cannot rely solely on the Decision to establish the Defendant's action was willful because the nature of intent at issue in the instant case was not required to be shown in the state court proceeding. Under the applicable federal standard, the Plaintiffs must establish, by a preponderance of the evidence, that the Defendant possessed the specific intent to cause injury to the Plaintiffs at the time he cut down the trees. See Ball, 451 F.3d at 69; In re Williams, 337 F.3d 504, 510 (5th Cir. 2003); In re Su, 290 F.3d 1140, 1146 (9th Cir. 2002); In re Shelmidine, 519 B.R. at 392-93. In contrast to the state court proceeding, the fact that the Defendant acted without just cause or excuse when he cut down the trees is not sufficient to warrant the Plaintiffs the relief they seek in this Court; more than that is required for relief under § 523(a)(6).

It is crucial to observe that the Superior Court made a finding of fact that the Defendant cut down the trees, and upon establishment of that fact, applied a rebuttable presumption in favor of the Plaintiffs, regarding the availability of treble damages. The Defendant then had an opportunity to rebut that presumption by showing he cut down the Plaintiffs' trees by mistake. See State of Vermont v. Singer, 904 A.2d 1184, 1187 (Vt. 2006); Ripchick v. Pearsons, 109 A.2d 347, 352 (Vt. 1954). The Superior Court found the Defendant failed to demonstrate he cut down the trees by mistake, consequently determined the presumption applied, and concluded the Plaintiffs were entitled to treble damages. In other words, the Superior Court awarded treble damage to the Plaintiffs **not because it found the Defendant had cut down the trees with the intent to harm the Plaintiffs or their property**, but rather, because (i) state law created a presumption in favor of awarding treble damages to the tree owners for destruction of the trees, and (ii) **the Defendant failed to show he had cut their trees by mistake** as was required to rebut that presumption. This was a pivotal evidentiary factor – and determinative of the award of treble damages to the Plaintiffs – in the state court proceeding.

By contrast, in this adversary proceeding, the burden works in the other direction: the Court must begin its analysis of whether the Plaintiffs are entitled to relief with a presumption in favor of the Defendant. Under well-established federal law, the Defendant is presumed entitled to a discharge of this debt unless the Plaintiffs prove by a preponderance of the evidence that the Defendant willfully (and maliciously) sought to harm them.

8

Beyond the finding that the Defendant did not cut the trees by mistake, the Decision's only other finding of fact or conclusion of law relating to the issue of intentionality dealt with the Defendant's reasons for cutting the trees. In that regard, Judge Teachout found as follows: "The evidence suggests that [the Defendant] cut the trees to use the wood for firewood. However there is no concrete evidence that this actually occurred, and Mr. Zutell denies it." Zutell, 2012 Vt. Super LEXIS, at *6. Since the Defendant's purpose behind the tree-cutting was not conclusively determined in Superior Court, the burden was on the Plaintiffs establish that fact at the trial in this adversary proceeding in order to have the Judgment excepted from discharge.

As the Court stated in the order on the Motion in Limine,

> In order to prevail here, the Plaintiffs must prove the Defendant acted with "a deliberate intent to injure, **not merely [that he committed] a deliberate or intentional act that [led] to injury**," Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) [emphasis added]. This is not an issue the Superior Court addressed in the trespass action, and it made no determination on this point. Crucially, there is nothing in the Superior Court decision indicating the parties litigated the Defendant's intent, or specifying whether the Defendant cut the trees with the intent to cause injury to the Plaintiffs and/or to their property.

Doc. # 57, p. 2 (emphasis original). The Court explicitly reiterated the burden the Plaintiffs needed to meet in order to prevail on this cause of action:

> … Therefore, while the Plaintiffs may rely on the findings and conclusions of the State Court, **the burden of establishing the Defendant acted with the requisite intent to warrant an exception to discharge remains with the Plaintiffs**.

Doc. # 57, p. 3 (emphasis added). Additionally, the Plaintiffs were instructed to introduce "only such evidence as is necessary to address the intent aspect of the claim, to comport with the Court's [o]rder, entered on January 21, 2016, denying the Motion in Limine" (doc. # 58).

At the February 12, 2016 trial, the Plaintiffs did not present any evidence that established the Defendant willfully injured them or their property by cutting their trees in 2009.[5] The Plaintiffs did not call the Defendant to testify regarding the tree-cutting incident and as a result, there was no direct testimony regarding the Defendant's state of mind when he cut the trees.

Each of the Plaintiffs gave credible testimony of how the Defendant treated them, both before and after the tree-cutting incident. Most of that testimony focused on two particular incidents which occurred well before the tree-cutting incident. The Plaintiffs recounted how the Defendant shot at their dog approximately 16 years before the tree-cutting incident. They also described the circumstances and conversations surrounding the construction of a fence between the Plaintiffs' property and the Defendant's, which took place about 3 years before the tree-cutting incident. Notwithstanding the evident and understandable trauma caused by the dog-shooting incident and the everyday tensions caused by a

9

neighbor's insistence on conspicuously delineated boundary lines, these incidents do not shed any light on the Defendant's state of mind or intentions at the time he cut the Plaintiffs' trees in 2009.

The Plaintiffs also testified about other less dramatic pre-2009 incidents, including the Defendant's repeated demands that the Plaintiffs keep their dogs off his property (in response to their puppy occasionally straying beyond their yard), the Defendant's propensity to refer to the Plaintiffs as "the girls" and act in ways that made them feel unwelcome in the community, and the Defendant's multiple confrontations with one of the Plaintiffs based upon his misunderstanding that she had granted permission to a stranger to come onto his land to do some bird-watching. While these incidents may demonstrate the Defendant was not friendly, or an ideal neighbor, to the Plaintiffs, they fall short of showing that many years later, in 2009, the Defendant had the subjective intent to cause injury to the Plaintiffs when he cut their trees, or that he had the objective knowledge that his tree-cutting was substantially certain to cause the Plaintiffs injury at that time. See In re Shelmidine, 519 B.R. at 392-93.

In their memoranda of law and other filings, the Plaintiffs also describe other events that occurred after the 2009 tree-cutting incident – and after entry of the 2012 Judgment – which they insist show the Defendant was engaged in a pattern of escalating animosity and ill will toward them and demonstrate his intent to harm them in 2009. The Plaintiffs testified that, within a few weeks of the Judgment being issued, the Defendant fired bullets over a contractor working on their property, drove erratically by their house firing bullets out of his truck onto their property, frequently passed by their property with his middle finger raised, and regularly sat on the steps of the church across from their property and stared at them. Their testimony was detailed and credible. It showed the Defendant acted in a hostile manner towards the Plaintiffs over a long period of time and was sufficient to support a finding that the Defendant harbored some animosity toward the Plaintiffs. However, it does not prove that at the time of the tree-cutting the Defendant intentionally sought to harm the Plaintiffs, or that the Defendant's destruction of the Plaintiff's trees was part of a well-established "pattern" of conduct aimed at harming the Plaintiffs.[6]

The record in this proceeding, combined with the findings and conclusions of the Decision, could easily spark speculation that the person who engaged in the type of conduct the Plaintiffs described – and which the Defendant did not deny – might have intended to cause harm to the Plaintiffs when he cut down their trees. The record also leaves open the possibility the Defendant simply cut down the trees because he wanted to, without regard for the ownership of the trees and without any scienter. See Geiger, 523 U.S. at 61.

To prevail in this proceeding, however, the Plaintiffs were required to prove the Defendant cut down the trees with the intent to harm the Plaintiffs. Since the Plaintiffs did not present any proof of

10

either the Defendant's subjective or objective intent at the critical time, the Plaintiffs have failed to meet their burden of proof for excepting the Judgment from discharge.

### 2. *May the Defendant exempt the 2008 Mahindra tractor as jointly owned property?*

Exemption statutes are remedial in nature, and ought to receive a liberal construction in favor of debtors. Porter v. Aetna Casualty & Surety Co., 370 U.S. 159, 162 (1962). "Debtors are also aided by the universal rule that exemption statutes should receive a liberal construction in favor of those intended to be benefited and favorable to the objections and purposes of the enactment." In re McQueen, 21 B.R. 736, 738 (Bankr. D. Vt. 1982); see also In re Caron, 82 F.3d 7(1st Cir. 1996). A debtor's right to exempt property is a crucial component of a debtor's fresh start. Schwab v. Reilly, 560 U.S. 770, 791 (2010).

Under Bankruptcy Rule 4003(c), the creditor has the burden of proving the debtor is not entitled to an exemption s/he has claimed.

Plaintiffs object to the Defendant's exemption of a 2008 Mahindra tractor (the "Tractor"), as joint property. The Plaintiffs base their objection upon the discovery of a bill of sale dated February 6, 2012, which indicates the Tractor was sold to the Defendant alone and thus cannot be jointly owned property.[7] At trial, the Plaintiffs asserted the bill of sale was a self-explanatory document that was sufficient to establish their claim, and therefore did not introduce any testimony regarding this cause of action.

The Defendant called his wife to testify regarding this cause of action. Mrs. Zutell testified the bill of sale was for a tractor the Zutells had disposed of prior to the Defendant's bankruptcy filing and was not the bill of sale for the Tractor the Defendant claimed as exempt. She explained that she and the Defendant had decided to buy a new tractor, and to do so they traded in the Tractor and paid the remaining balance due in cash. The cash came from Mrs. Zutell's IRA account. She deposited the funds from her IRA into their joint checking account and then withdrew the necessary cash (approximately $8,500) from that joint account to purchase the new tractor. See Def's Exs. D and E. She also stated that she and her husband treated that tractor as having been purchased jointly, and with the intent to use it as joint property, consistent with their use of the Tractor. However, when they discovered the new tractor had a malfunctioning motor, Mrs. Zutell called the seller and demanded return of the Tractor they had traded in. Based upon the defects in the new tractor, she was able to reverse the transaction shown on the bill of sale and retrieve the original Tractor. It was this piece of equipment they owned when the Defendant filed his Chapter 7 case.

The Plaintiffs did not rebut Mrs. Zutell's testimony or introduce other evidence with respect to the ownership of the Tractor as of the petition date. Instead, the Plaintiffs reasserted that since the bill of sale in the record was the only documentation relating to the Tractor, and it identified the Defendant as the sole owner of that item, the Court must rely on it to determine the Tractor was not exempt joint property.

The Plaintiffs reiterated this same argument in their post-trial memorandum: "His name appears on the bill of sale as the purchaser of the tractor. Notwithstanding the testimony that the tractor was purchased from funds from Mrs. Zutell's IRA account, the fact that [the Defendant] purchased it is consistent with his sole ownership of the tractor or Mrs. Zutell's gift of the tractor to him" (doc. # 80, p. 3).

Mrs. Zutell credibly explained the transaction set forth on the February 6, 2012 bill of sale was **not** for the purchase of the Tractor in question. Although she did not give any details regarding the purchase of the Tractor (when, how, and with what funds it was purchased), she unequivocally identified the Tractor as the one in the Zutells' possession on the date of the Defendant's bankruptcy filing and the one claimed as exempt joint property in Schedule C.

Based upon the record, and particularly in light of Mrs. Zutell's credible and detailed testimony and the Plaintiffs' failure to present any evidence in support of their objection, the Court finds the Plaintiffs have failed to meet their burden of proof on this cause of action.

3. *Should this case be dismissed, under § 707(a), as having been filed in bad faith?*

The Plaintiffs' third and final cause of action in the Complaint seeks dismissal of the Defendant's case as a bad faith filing under § 707(a) of the Bankruptcy Code. That statutory provision states a court "may dismiss a case under this chapter only after notice and hearing and only for cause" and sets out a non-exhaustive list of possible causes. Although this list does not include bad faith, courts in the Second Circuit regularly treat bad faith, or lack of good faith, as cause for dismissal under 707(a). See In re Gutierrez, 528 B.R. 1, 13 (Bankr. D. Vt. 2014). In determining whether to dismiss a case based upon bad faith under § 707(a), courts in the Second Circuit consider fourteen factors that are known as the Lombardo factors:

> (1) the debtor's manipulations having the effect of frustrating one particular creditor;
> (2) the absence of an attempt to pay creditors;
> (3) the debtor's failure to make significant lifestyle changes;
> (4) the debtor has sufficient resources to pay substantial portion of debts;
> (5) the debtor inflates expenses to disguise financial well-being;
> (6) the debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors;
> (7) the debtor reduced his creditors to a single creditor in the months prior to the filing of the petition;
> (8) the debtor filed in response to a judgment, pending litigation or collection action; there is an intent to avoid a large single debt;
> (9) the unfairness of the use of Chapter 7;
> (10) the debtor transferred assets;
> (11) the debtor is paying debts to insiders;
> (12) the debtor failed to make candid and full disclosure;
> (13) the debts are modest in relation to assets and income; and
> (14) there are multiple bankruptcy filings or other procedural "gymnastics."

In re Lombardo, 370 B.R. 507, 511-12 (Bankr. E.D.N.Y. 2007). While the presence of one of these factors alone will not be sufficient to support a dismissal for cause, a finding of a combination of factors may suffice. Id.

The party moving for dismissal bears the burden of proving cause by a preponderance of the evidence. In re Gutierrez, 528 B.R. at 14 (citing In re Aiello, 428 B.R. 296, 299 (Bankr. E.D.N.Y. 2010)).

At trial, the Plaintiffs touched upon three of the fourteen factors: the debtor's inflation of expenses to disguise financial well-being (Factor # 5), the debtor's filing of the bankruptcy case in response to judgment in order to avoid a large single debt (Factor # 8), and the debtor's failure to make candid and full disclosures (Factor # 12). Regarding the fifth factor, the Plaintiffs argued the Defendant's inflation of expenses was evident by the dramatic fluctuation in net income between the years 2013 and 2014. In 2013, the Defendant netted $4,500 from a gross income of $63,000 and in 2014, the Defendant netted $1,300 from a gross income of $120,000. The Debtor testified the significantly higher gross income in 2014 was due to an unexpected increase in volume of auto body repair work following a hailstorm that year. He further testified that the gap between gross and net income in 2014 was due to uncharacteristically high expenses, resulting from his need to contract out much of the hailstorm repair work and other miscellaneous expenses. He explained that notwithstanding the substantial increase in work, he actually earned a much smaller net income that year as a result of the corresponding, and unusually large, expenses.[8] The Defendant's testimony to be generally credible with respect to this Lombardo factor. The Plaintiffs did not introduce any other facts, or present any admissible evidence (from either the Defendant or other sources), to support their allegation that the Defendant had inflated his expenses to disguise his actual financial circumstances at the time of his bankruptcy filing.

Regarding the eighth factor, the Plaintiffs argued the Court must find the Defendant filed his case in bad faith because almost all of his unsecured debt was attributable to the Judgment. Schedule F of the Defendant's petition reflects the Judgment accounts for approximately 88% of the Defendant's total unsecured debt. It is the Defendant position that the mere fact the Plaintiffs' Judgment claim is by far the Defendant's largest debt – and may have been the impetus for his bankruptcy filing – is not, in and of itself, sufficient to establish the Defendant filed his case in bad faith. The Defendant pointed out that many bankruptcies are filed as a result of a single large debt arising from a lawsuit and debtors who do so are not automatically disqualified from a bankruptcy fresh start. The Defendant, in effect, declared his right to a fresh start prevails if this is the Plaintiffs' only argument in support of a bad faith finding. The Plaintiffs presented no legal argument or case law on this Lombardo factor. The Defendant's legal position with respect to this factor is consistent with the pertinent case law. "[T]he fact that a debtor files a Chapter 7 petition solely to avoid the large debt of a single creditor or to frustrate that creditor's collection

13

efforts, standing alone, is not enough to warrant a dismissal under § 707(a)…Rather, there must be evidence of an 'intention to avoid a large single debt' based on conduct akin to fraud, misconduct, or gross negligence." In re Gutierrez, 528 B.R. at 15 (citing In re Aiello, 428 B.R. at 303).

Finally, regarding the twelfth factor – the Defendant's alleged failure to make candid and full disclosure – the Plaintiffs alleged the Defendant failed to disclose that he had an employee working for him and never disclosed that fact in his bankruptcy case. The Plaintiffs testified they had occasion to witness traffic in and out of the Defendant's property, and to observe who traveled to and from his property on a regular basis during the work week, and based upon those observations, they were quite sure the Defendant had an employee working for him at the time he filed his bankruptcy petition. They argued the Defendant's failure to disclose that fact in his bankruptcy petition evidenced bad faith justifying dismissal. In response, the Defendant testified he categorically did not have an employee working for him at the time he filed his petition and explained that the car to which the Plaintiffs referred was owned by someone who was simply working on his own vehicle at the Defendant's premises over an extended period of time. The Defendant confidently testified that he paid no compensation to this person, and had no employment relationship with him, at the time he filed his bankruptcy case. The Court finds the Defendant's testimony on this point was uncontested and credible.

Based on the evidence and arguments presented at trial, the Court finds the Plaintiffs failed to establish any of the Lombardo factors and failed to meet their burden of proof to show the Defendant filed his case in bad faith. Moreover, the Plaintiffs did not rebut the Defendant's testimony with respect to any of the factors upon which they relied, or show other grounds that warrant dismissal under § 707(a).

## CONCLUSION

For the reasons set forth above, the Court finds the Plaintiffs have failed to meet their burden of proof in each of the three causes of action asserted in the Complaint. Therefore, the Court must deny all relief the Plaintiffs seek in this adversary proceeding and grant judgment in favor of the Defendant on all causes of action. The Court (1) denies the Plaintiffs' request to except their Judgment claim from the Defendant's discharge, (2) overrules the Plaintiffs' objection to the Defendant's exemption of the 2008 Mahindra tractor, and (3) denies the Plaintiffs' request for dismissal of the Defendant's case based upon bad faith under § 707(a).

This constitutes the Court's findings of fact and conclusions of law.

Burlington, Vermont  
May 27, 2016

Colleen A. Brown  
United States Bankruptcy Judge

[1] All statutory citations refer to Title 11, United States Code (the "Bankruptcy Code"), unless otherwise indicated.

[2] The Decision made detailed findings with respect to the boundary between the parties' lands and the historical ownership of their respective parcels. Since these findings are not in dispute, this Court accepts them as true, for purposes of this memorandum.

[3] The controlling statutes for computing damages for this conduct provide:
  **§ 3602. Unlawful cutting of trees**
  (a) Any person who cuts, fells, destroys to the point of no value, or substantially damages the potential value of a tree without the consent of the owner of the property on which the tree stands shall be assessed a civil penalty in the following amounts for each tree over two inches in diameter that is cut, felled, or destroyed:
  (1) if the tree is no more than six inches in stump diameter or DBH, not more than $25.00;
  (2) if the tree is more than six inches and not more than ten inches in stump diameter or DBH, not more than $50.00;
  (3) if the tree is more than 10 inches and not more than 14 inches in stump diameter or DBH, not more than $150.00;
  (4) if the tree is more than 14 inches and not more than 18 inches in stump diameter or DBH, not more than $500.00;
  (5) if the tree is more than 18 inches and not more than 22 inches in stump diameter or DBH, not more than $1,000.00;
  (6) if the tree is greater than 22 inches in stump diameter or DBH, not more than $1,500.00.
  (b) In calculating the diameter and number of trees cut, felled, or destroyed under this section, a law enforcement officer may rely on a written damage assessment completed by a professional arborist or forester.

  **§ 3606. Treble damages for conversion of trees or defacing marks on logs**
  If a person cuts down, destroys, or carries away any tree or trees placed or growing for any use or purpose whatsoever, or timber, wood, or underwood standing, lying, or growing belonging to another person, without leave from the owner of such trees, timber, wood, or underwood, or cuts out, alters, or defaces the mark of a log or other valuable timber, in a river or other place, the party injured may recover of such person, in an action on this statute, **treble damages** or for each tree the same amount that would be assessed as a civil penalty under section 3602 of this title, whichever is greater. However, **if it appears on trial that the defendant acted through mistake, or had good reason to believe that the trees, timber, wood, or underwood belonged to him or her, or that he or she had a legal right to perform the acts complained of, the plaintiff shall recover single damages only, with costs**. For purposes of this section, "damages" shall include any damage caused to the land or improvements thereon as a result of a person cutting, felling, destroying to the point of no value, substantially reducing the potential value, or carrying away a tree, timber, wood, or underwood without the consent of the owner of the property on which the tree stands. If a person cuts down, destroys, or carries away a tree or trees placed or growing for any use or purpose whatsoever or timber, wood, or underwood standing, lying, or growing belonging to another person due to the failure of the landowner or the landowner's agent to mark the harvest unit properly, as required under section 3603 of this title, a cause of action for damages may be brought against the landowner.
13 V.S.A. §§ 3602, 3606 (2016) (emphasis added).

[4] All citations to documents in the record refer to those filed in the instant adversary proceeding, AP # 14-1012, unless otherwise indicated.

[5] The Plaintiffs' allegation regarding this cause of action in their Complaint is vaguely worded; they claimed there that the Defendant injured the "Plaintiffs and/or their property." See Complaint, p. 4. The Plaintiffs then stated in their post-trial memorandum that the Defendant showed "a state of mind consistent with a desire to cause harm to the Plaintiffs and their property [which] coupled with the recklessness of his activities…establish the requisite deliberate intent to injure the Plaintiffs" (doc. # 80, pp. 2-3).

[6] Upon the Defendant's objection to introducing testimony regarding post-2009 events as irrelevant, and upon the Court's questioning of how those events related to intent at the time of the tree-cutting, the Plaintiffs' attorney responded that he was attempting to elicit testimony that would show "the pattern…of animosity that [the Defendant] has shown to [the Plaintiffs] throughout the course of their residence as their neighbor" and to show "the actions that occurred after the [J]udgment are part of an escalating pattern, a pattern nonetheless of animosity and ill will towards [the Plaintiffs]."

[7] The Complaint asserts the Debtor exempted this tractor as a tool of the trade, but the statutory reference in Schedule C is to § 522(b)(3)(B), the exemption for jointly owned property.  Subsection 522(d)(3) articulates the type of jointly owned property that may be claimed exempt, and it includes tools of the trade, however, the record does not refer to this subsection or explain this alleged basis of the exemption. Since neither the evidence the Plaintiffs presented at trial, nor the legal arguments they have put forth, raised a tools of the trade argument, the Court will limit its analysis to whether the Tractor was jointly owned, notwithstanding the tools of the trade allegations in the Complaint.

[8] The Debtor did not identify specifically what these expenses were, and the Plaintiffs' attorney did not request further detail.